IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 3:14-cv-00638 |
| v. | )<br>)<br>) **C O M P L A I N T** |
| FLAMBEAU, INC. | )<br>) |
| Defendant. | ) (Jury Trial Demand)<br>) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 (the "ADA") to correct unlawful employment practices and to provide appropriate relief to Dale Arnold ("Arnold") who was adversely affected by such practices. Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Flambeau, Inc. ("Flambeau"), through its wellness program, required Arnold, then a current employee, to submit to medical examinations and inquiries that were not job-related or consistent with business necessity in violation of Section 102(d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates

1

by reference Section 706(f)(1) and (3)of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Wisconsin.

## PARTIES

3.  Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant Flambeau has continuously been a Wisconsin corporation doing business in the State of Wisconsin and the City of Baraboo and has continuously had at least 15 employees.

5.  At all relevant times, Defendant Flambeau has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.  At all relevant times, Defendant Flambeau has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.  More than thirty days prior to the institution of this lawsuit, Dale Arnold filed a charge with the Commission alleging violations of Title I of the ADA by Defendant Flambeau.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8. Prior to institution of this lawsuit, the EEOC's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with the ADA through informal methods of conciliation, conference and persuasion within the meaning of § 107 of the ADA, 42 U.S.C. §12117, which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3):

    a. On December 12, 2013, the EEOC invited Defendant to engage in informal conciliation efforts to eliminate the practices the EEOC found unlawful.

    b. On March 18, 2014, the EEOC determined that it was unable to obtain an agreement acceptable to the EEOC by informal methods of conciliation, conference, and persuasion, and so advised Defendant.

9. From at least December 2011 through December 2012, Defendant Flambeau engaged in unlawful employment practices at its facility in Baraboo, WI, in violation of Section 102(d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A).

10. In December, 2011 Flambeau, through its wellness program, required employees to complete biometric testing and a health risk assessment.

11. Flambeau's biometric testing and health risk assessment included disability-related inquiries and medical examinations within the meaning of the Americans With Disabilities Act. The biometric testing involved blood work and measurements, and the health risk assessment required that employees self-disclose their medical history.

12. The biometric testing and health risk assessment conducted through Flambeau's wellness program were not job-related and consistent with business necessity.

13. Arnold was unable to complete the biometric testing and health risk assessment on the day appointed by Flambeau, December 14, 2011, because he was on

medical leave and being treated in the hospital for cardiomyopathy and congestive heart failure.

14. After Arnold returned from his medical leave, he tried to complete the required biometric testing and health risk assessment. His requests for the necessary materials and additional time were rejected and denied by Flambeau.

15. On or about January 6, 2012, Arnold was told by Flambeau's Benefits Specialist that his health insurance was terminated. On or about January 9, 2012, Flambeau sent a letter to Arnold indicating that his "medical insurance" was cancelled because he had not completed Flambeau's requirements, including the biometric testing and health risk assessment. Flambeau's letter indicated that he could apply for "medical insurance" at the COBRA premium rate.

16. If Arnold had been able to complete Flambeau's so-called "voluntary" biometric testing and health risk assessment, Flambeau would have covered roughly three fourths of Arnold's health insurance premiums. Because Arnold did not complete the biometric testing and health risk assessment, he was required, as a penalty, to pay the entire premium cost for single coverage for his health insurance under COBRA. Because of his finanacial situation, Arnold was unable to afford the penalty and the cancellation of his health insurance continued until on or about June 1, 2012.

17. Flambeau required that Arnold participate in medical examinations and inquiries that were not job-related or consistent with business necessity in violation of Section 102(d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A).

18. The medical examinations and inquiries were not voluntary and therefore were not permitted by Section 102(d)(4)(B) of the ADA, 42 U.S.C. § 12112(d)(4)(B) because,

*inter alia*, Arnold was subjected to termination of his health insurance and a financial penalty of having to pay the entire premium cost under COBRA to obtain reinstated coverage as a result of not completing the examinations and inquiries; because Flambeau told Arnold and the other Flambeau employees that participation in the examinations and inquiries was "mandatory" to be on Flambeau's "medical insurance"; because Flambeau told Arnold and the other Flambeau employees that failing to attend the testing at his or her scheduled time would result in "disciplinary action"; and because Flambeau in fact did not provide health insurance to new employees unless they submitted to the examinations and inquiries, and did not offer health insurance to existing employees without the COBRA premium penalty unless they submitted to the examinations and inquiries.

19. The effect of the practices complained above, has been to deprive Arnold of equal employment opportunities and otherwise adversely affect his status as an employee because his health insurance was terminated and he was subjected to a financial penalty because he did not complete the unlawful medical examinations and inquiries.

20. Flambeau's acts were intentional.

21. Flambeau's acts as described above were done with malice or reckless disregard of Arnold's federally protected rights.

## JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Flambeau, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with

it, from requiring employees to undergo unlawful medical examinations or answer unlawful disability-related inquiries.

      B.      Order Defendant Flambeau to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

      C.      Order Defendant Flambeau to make whole Arnold by providing appropriate back pay losses in the form of lost health insurance benefits, insurance premiums paid by Arnold for periods where he had no health insurance, and other losses, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.      Order Defendant Flambeau to make whole Arnold by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

      E.      Order Defendant Flambeau to make whole Arnold by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 7-21 above, including, but not limited to, emotional pain, suffering, inconvenience and mental anguish, in amounts to be determined at trial.

      F.      Order Defendant to pay Arnold punitive damages for its malicious and reckless conduct, as described in paragraphs 7-21 above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the EEOC its costs of this action.

        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

131 M STREET, N.E.
5TH FLOOR
WASHINGTON, D.C. 20507


John C. Hendrickson
Regional Attorney

Jean P. Kamp
Associate Regional Attorney

Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Telephone: (312) 869-8116
Facsimile: (312) 869-8124
jean.kamp@eeoc.gov

Dated: September 30, 2014

*s:/Brian C. Tyndall*
Brian C. Tyndall
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
310 W. Wisconsin Avenue
Suite #500
Milwaukee, WI 53203-2292
Phone (414) 297-1130
Fax (414) 297-3146
brian.tyndall@eeoc.gov

7